UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CASEY DALE BARNES,<br><br>    Plaintiff,<br><br>v.<br><br>JESSICA GARNER, et al.,<br><br>    Defendants. | Case No. 3:18-cv-01030<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

Plaintiff Casey Dale Barnes's amended complaint (Doc. No. 17) is before the Court for an initial screening under 28 U.S.C. §§ 1915(e)(2) and 1915A. Barnes, who is incarcerated and appears pro se and *in forma pauperis*, has filed this action against Defendants Jessica Garner and Russell Washburn under 42 U.S.C. § 1983, alleging violations of his federal civil rights. The defendants are employees of CoreCivic, Inc., a private, for-profit corporation formerly known as Corrections Corporation of America, that operates several correctional facilities in Tennessee by contract with the Tennessee Department of Correction (TDOC). Washburn is the warden at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, and Garner served as a sergeant and chair of the TTCC disciplinary committee while Barnes was incarcerated there. Barnes alleges that the defendants failed to protect him from an attack by four gang members also incarcerated at TTCC, that they wrongly convicted him of disciplinary violations without due process, and that other CoreCivic employees retaliated against him for filing this action by altering his sentence structure to prevent his release on parole. For the reasons that follow, the Magistrate

Judge will recommend that the Court dismiss Barnes's Eighth Amendment and retaliation claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A, but allow his due process claims to proceed.

## I. Background

### A. Factual Background[1]

#### 1. Attacks and Protective Custody at TTCC

Barnes alleges that, on August 14, 2017, four gang members who were also incarcerated at TTCC entered his cell, attacked him with homemade knives, and repeatedly sexually assaulted him. (Doc. No. 17.) Barnes "was seriously injured and repo[]rted this crime to the officer in his unit but was never treated for [r]ape or any other injuries." (*Id.* at PageID# 141.) On August 27, 2017, four "gang members from D-Unit came in [his] cell and beat [him] up and robbed [him]." (Doc. No. 17-8, PageID# 211.) Barnes told his "mother what was going on and she began to make calls" to get Barnes placed into protective custody. (*Id.*) Barnes "wasn't taken to protective custody until . . . September 6th, 2017, after his family had made hundreds of phone calls to the TDOC/Admin[i]stration in Nashville . . . ." (Doc. No. 17, PageID# 141, ¶ 6.) Barnes states that he was placed in protective custody because of the rape "and also because he was being forced to rec[e]ive illegal mail for the gang members that had raped him." (*Id.* at PageID# 142, ¶ 8.) After the attack, Barnes "tried to file charges against the inmates who commit[t]ed the ass[a]ults against him," (Doc. No. 17-7, PageID# 180, ¶ 6), but several CoreCivic officers threatened to put Barnes in the same cell as his attackers if Barnes did not "drop the [r]ape case . . ." (Doc. No. 17, PageID# 141, ¶ 7).

---

[1] The facts in this section, which the Court accepts as true for purposes of screening under 28 U.S.C. §§ 1915(e)(2) and 1915A, are drawn from Barnes's amended complaint and the attached exhibits.

2

## 2. Initial Parole Hearing and TTCC Disciplinary Convictions

Barnes had an initial parole hearing on December 18, 2017, at which he was told that that there were three disciplinary convictions in his TTCC record and that "his time was incorrect and that the file showed some issues with his credits. His parole had to be put off . . . for six (6) months to try and fix the time issues and to figure out who was forging the [r]epo[]rts in his file" (Doc. No. 17; Doc. No. 17-7, PageID# 181, ¶ 11). The "Offender Hearing Decision Notification" from that hearing states that the Parole Board decided to decline parole because Barnes's "release from custody at th[at] time would have [had] a substantially adverse effect on institutional discipline . . . ." (Doc. No. 17-7, PageID# 202.)

Barnes states that the first disciplinary charge—disciplinary incident ID# 01288447—involved a package addressed to him that was searched on August 22, 2017, and found to contain loose tobacco, cell phones, and cell-phone chargers. (Doc. Nos. 17, 17-4.) According to TTCC records, the disciplinary committee held a hearing on September 12, 2017, and Barnes pleaded guilty to the charge of conspiracy to violate state law and waived his rights to notice, to have the reporting official present, and to call witnesses. (Doc. No. 17-4.) Barnes states in his amended complaint that he was not given a copy of the disciplinary report until seven months after the hearing, that he was not allowed to view photographs of the evidence against him, and that he was not allowed to call witnesses on his behalf at the disciplinary hearing. (Doc. No. 17.) However, in a grievance attached to his amended complaint, Barnes acknowledges that he was "served" with a copy of this disciplinary "write-up" on September 11, 2017, and that he "was read the write-up and [he] signed it." (Doc. No. 17-8, PageID# 211.) He further states in the attached grievance that the disciplinary committee convened shortly thereafter "without [him] being able to call a witness, no copy of the write-up, [and] no inmate or staff advisor . . . ." (*Id.*) Barnes states that Chris Brum, a "TDOC Cont[r]act Monitor," told him that if he pleaded guilty to the conspiracy-to-violate-state-

law charge as a Class-B infraction, a second disciplinary charge regarding a refused drug screen "would be dropped." (*Id.*) If he did not plead guilty, he "would be guaranteed a Class A" infraction for the tobacco and cell phones "and the [Class] B for the drug screen." (*Id.*) Barnes felt that he had "no choice" but to plead guilty even though he and Brum both knew that the four gang members who attacked Barnes had the package sent in his name. (*Id.*)

The second disciplinary charge—disciplinary incident ID# 1290951—alleged that Barnes refused a drug screen and admitted to illegal drug use on September 6, 2017. (Doc. Nos. 17, 17-5.) Barnes states that he "was served a write-up for failing a drug screen" on September 8, 2017, after "Officer Hauri claimed [Barnes] refused a drug screen . . . ." (Doc. No. 17-8, PageID# 211.) According to TTCC records, the disciplinary committee held a hearing on this charge on September 13, 2017. (Doc. No. 17-5.) Barnes states that he did not attend the hearing. (Doc. No. 17.) TTCC records show that Barnes pleaded not guilty and did not waive any of his procedural rights. (Doc. No. 17-5.) The committee found him guilty based on an officer's testimony, even though Brum had told him this charge would be dropped when he pleaded guilty to the first charge. (Doc. Nos. 17-5, 17-8.)

The third disciplinary charge—disciplinary incident ID# 01295170—involved a syringe found on September 29, 2017, in a cell that Barnes allegedly shared with another inmate. (Doc. Nos. 17, 17-6.) The officer who found the syringe charged both Barnes and his cellmate with possession of drug paraphernalia, even though Barnes was in protective custody and not the cell at the time. (*Id.*) TTCC records show that the disciplinary committee held a hearing on this charge and that Barnes pleaded guilty, and again waived his rights to notice, to have the reporting official present, and to call witnesses. (Doc. No. 17-6.) But Barnes alleges that he never pleaded guilty to this charge and did not receive a copy of the disciplinary report until several months later. (Doc.

No. 17.) Barnes "has tried to get these convictions removed from his file[ ] and has been unsuccessful in every attempt." (*Id.* at PageID# 142, ¶ 12.)

### 3. Subsequent Parole Review Hearings

On March 7, 2018, Barnes was transferred to Hardeman County Correctional Facility (HCCF), in Whiteville, Tennessee, which is also run by CoreCivic, and "placed into permanent protective custody." (*Id.* at PageID#142, ¶ 13.) On July 23, 2018, Barnes attended a parole review hearing, and the Parole Board voted to grant him parole starting on August 17, 2018. (Doc. No. 17-7.) Barnes states that

> one (1) hour before he was set to be released[,] the Core Civic employe[e] he[re] at Hardeman County Correctional Complex [c]hanged and altered his sentence structure to show a nine (9) year sentence to serve with all of his previous jail credits and all of his earned program credits, and his day[-]for[-]day parole credits that were granted to him on his sentence have somehow dis[]appe[a]r[]ed.

(*Id.* at PageID# 181, ¶ 13.) On September 10, 2018, the Board of Parole sent Barnes a letter notifying him that he was scheduled to appear at a pre-parole rescission hearing on October 16, 2018. (Doc. No. 17-7.) The notice stated that the "[r]eason for [r]escission" was that Barnes's "sentence structure [had] changed from 6 to 9 years," and his sentence expiration and release eligibility "dates [had] increased." (*Id.* at PageID# 205.) On October 23, 2018, the Board sent Barnes a letter notifying him that it had decided to rescind his parole. (Doc. No. 17-7.)

### B. Procedural History

Barnes filed his original complaint in Chancery Court for Trousdale County, Tennessee.[2] (Doc. No. 1-2.) Garner and Washburn were served with the complaint on September 10, 2018, and removed the action to this Court on October 9, 2018. (Doc. No. 1.) On October 24, 2018, Barnes

---

[2] It appears that Barnes signed his original complaint on May 3, 2018 (Doc. No. 1-2, PageID# 14), but the record does not reflect the date on which the original complaint was filed in state court.

5

filed a motion to appoint counsel (Doc. No. 8), followed on November 5, 2018, by an application to proceed *in forma pauperis* (Doc. No. 9) and a second motion to appoint counsel (Doc. No. 10). On December 4, 2018, Barnes moved for leave to file an amended complaint but did not attach a proposed amended complaint to his motion as this Court's Local Rules require. (Doc. No. 12.)

In an order issued April 15, 2019, the Court granted Barnes's *in forma pauperis* application, denied without prejudice his motions to appoint counsel, and ordered him to supplement his motion to amend by filing a proposed amended complaint by May 2, 2019. (Doc. No. 16.) Barnes filed a proposed amended complaint and exhibits on April 29, 2019. (Doc. Nos. 17–17-8.) In a concurrently filed order, the Court has granted Barnes's motion to amend, noting that it must screen the amended complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A before Barnes's claims may proceed. Barnes's amended complaint alleges violations of his Eighth Amendment rights, his right to due process of law under the Fifth and Fourteenth Amendments, and retaliation. He seeks monetary damages, declaratory relief, and injunctive relief expunging his disciplinary convictions and requiring the Tennessee Board of Parole to reinstate his rescinded parole. (Doc. No. 17.)

**II.      Legal Standard**

The standard for reviewing pleadings under 28 U.S.C. §§ 1915(e)(2) and 1915A is the same as the standard for evaluating motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Aho v. Cleveland-Cliffs, Inc.*, 219 F. App'x 419, 422 (6th Cir. 2007)). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need

6

to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Barnes proceeds pro se, the Court construes his filings "liberally" and holds his amended complaint "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III.    Analysis**

    **A.    Barnes's Eighth Amendment Claims**

Under the Eighth Amendment, "prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998); *see also Famer v. Brennan*, 511 U.S. 825, 833 (1994) ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aide, the government and its officials are not free to let the state of nature take its course." (alterations and citations omitted)). Barnes has not identified any of the officers who allegedly failed to protect him from attack and delayed his placement in protective custody. He also has not alleged any facts

7

that would allow the Court to infer that Defendants Washburn and Garner were involved in or aware of these incidents. Even assuming that Washburn or Garner supervised one or more of the officers involved, the fact of supervision alone is not enough to establish liability under 42 U.S.C. § 1983. "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Rather, a supervising official's "'failure to supervise, control or train the offending individual'" is only actionable if "'the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Id.* at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "'[A]t a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* Barnes has not done so. His Eighth Amendment claims should therefore be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to state claims on which relief can be granted.

B.    **Barnes's Retaliation Claims**

Barnes claims that, after the Board of Parole granted him parole, a CoreCivic employee at HCCF retaliated against him for filing this lawsuit by changing his sentence structure to prevent his release. Barnes seeks declaratory and injunctive relief requiring the Board "to reinstate the previously granted parole approval which was rescinded once . . . [his] sentence was 'changed' by Core Civic . . . ." (Doc. No. 17, PageID# 149.) Even assuming that a CoreCivic employee illegally changed Barnes's sentence to punish him for filing this action,[3] Barnes's retaliation claim cannot

---

[3]    Barnes alleges that his sentence was changed on August 17, 2018 (Doc. No. 17-7), but Washburn and Garner were not served with his complaint until September 10, 2018 (Doc. No. 1). Barnes has not alleged how the CoreCivic employee who changed his sentence structure would have known about this action before either defendant was served.

proceed under 42 U.S.C. § 1983. Because Barnes's success on the claim would necessarily imply the invalidity of his confinement, the relief he seeks is only available through a petition for habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973). This is because the Supreme Court has long held that

> a state prisoner's § 1983 action is barred (absent prior invalidation [of his conviction or sentence])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original). The Supreme Court and the Sixth Circuit have clarified that, if all a plaintiff seeks is a new parole eligibility hearing during which state parole authorities "'may, in their discretion, decline to shorten [the] plaintiff's prison term[,]'" then the relief sought "has only a *potential* effect on the amount of time a prisoner serves," and the claim can proceed under § 1983. *Thomas v. Eby*, 481 F.3d 434, 439 (6th Cir. 2007) (quoting *Wilkinson*, 544 U.S. at 82)). But that is not what Barnes asks the Court to order in this case. Barnes alleges that he was granted parole and that his parole was only rescinded because a CoreCivic employee unlawfully changed his sentence structure. A finding by this Court that Barnes's allegations are true would therefore necessarily imply that Barnes's continued confinement is illegal. Barnes's only avenue for seeking such relief is a habeas petition, and his retaliation claim in this § 1983 action must be dismissed.

### C. Barnes's Due Process Claims

Barnes's final claim is that "Defendant Jessica Garner's actions relative to the disciplinary hearing proceedings in this matter violated the Due Process Clause of the 5th and 14th Amendment of the U.S. Constitution." (Doc. No. 17, PageID# 149.) The Supreme Court held in *Wolff v. McDonnell* that incarcerated persons "may not be deprived of life, liberty, or property without due process of law." 418 U.S. 539, 556 (1974). However, "[p]rison disciplinary proceedings are not

9

part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* When a protected due process interest is at stake in a prison disciplinary proceeding, the Constitution requires only that an incarcerated person receive written notice of the charges against him no less than twenty-four hours before the disciplinary hearing; be given a written statement by the fact-finder as to the evidence relied on and the reasons for the disciplinary action taken; be afforded a qualified right to call witnesses and present documentary evidence in his own defense; and, if the inmate is illiterate, be entitled to help from a fellow inmate or a staff member. *Id.* at 564–570.

Construing Barnes's amended complaint liberally, it appears that Barnes has alleged that the TTCC disciplinary committee, chaired by Defendant Garner, deprived him of sentence credits without affording him the due process protections announced in *Wolff*. There is no federal constitutional right to "good-time credit for satisfactory behavior while in [state] prison." *Id.* at 557. However, a state may create a due process interest in such credits by statute. *See id.* (holding that Nebraska "not only provided a statutory right to good time but also specifie[d] that it is to be forfeited only for serious misbehavior"); *see also Sandin v. Conner*, 515 U.S. 472, 477–78 (1995) (discussing *Wolff* and recognizing that state statutes may create due process interests). The Supreme Court has explained that "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986) (quoting *id.*). In Tennessee, state law provides that inmates who "exhibit[ ] good institutional behavior or . . . satisfactory performance within a [work, educational, or vocational training] program may be awarded time credits toward the sentence imposed," but that "[n]o inmate shall have the right to any such time credits . . . ." Tenn.

Code Ann. § 41-21-236(a)(2)(A), (2)(D). However, the same statute expressly limits prison officials' discretion to take away sentence credits once they are awarded:

> An inmate may be deprived of those sentence credits previously awarded pursuant to this section only for the commission of any major infraction designated by the [TDOC] as a Class A disciplinary offense, including but not limited to, rape, arson, riot, escape or assault with a deadly weapon, or refusal to participate in an assignment.

*Id.* at § 41-21-236(a)(5). Tennessee courts have therefore held that "the loss of previously earned sentence reduction credits . . . implicate[s] an interest sufficient to invoke due process." *Garrard v. Tenn. Dep't of Corr.*, No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *7 (Tenn. Ct. App. May 8, 2014) (alteration omitted) (quoting *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001)).

Barnes appears to allege that all three disciplinary convictions resulted in the loss of previously earned sentence credits. With respect to the conviction for refusing a drug test, Barnes alleges that Defendant Garner and the TTCC disciplinary committee denied him the opportunity to call witnesses and present evidence in his defense. And he alleges, with respect to the conviction for drug paraphernalia, that they denied him advanced written notice of the charge. Because Barnes's success on his due process claim would at most entitle to him to a new disciplinary hearing, during which "prison officials would retain discretion regarding whether to" deprive him of previously earned sentence credits, that success "would not necessarily affect the duration of his sentence" and may therefore proceed under § 1983. *Thomas*, 481 F.3d at 440. For purposes of screening under 28 U.S.C. §§ 1915(e)(2) and 1915A, Barnes has stated a colorable due process claim under § 1983.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court DISMISS Barnes's claims of Eighth Amendment violations and of retaliation for failure to state a claim

11

under 28 U.S.C. §§ 1915(e)(2) and 1915A, terminating Defendant Washburn, but allow his due process claims against Defendant Garner to proceed.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of July, 2019.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge