UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CASEY DALE BARNES, | |
| Plaintiff, | Case No. 3:18-cv-01030 |
| v. | Judge Aleta A. Trauger |
| | Magistrate Judge Alistair E. Newbern |
| JESSICA GARNER, et al., | |
| Defendants. | |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of Plaintiff Casey Dale Barnes's incarceration at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. TTCC is operated by CoreCivic, Inc., the private corporation formerly known as Corrections Corporation of America, by contract with the Tennessee Department of Correction (TDOC). Defendant Jessica Garner served as the TTCC Disciplinary Hearing Officer during Barnes's incarceration. Barnes, who appears pro se and *in forma pauperis*, claims that Garner wrongly convicted him of disciplinary violations without due process, in violation of his Fifth and Fourteenth Amendment rights.[1] (Doc. No. 17.) Now pending is Garner's motion for summary judgment (Doc. No. 23), to which Barnes filed a response in opposition (Doc. No. 31). Considering

---

[1]     Barnes's amended complaint also alleges that Garner and TTCC Warden Russell Washburn violated his constitutional rights by failing to protect him from an attack by four gang members incarcerated at TTCC and that unnamed individuals at another facility retaliated against him by altering his sentence structure. (Doc. No. 17.) The Court dismissed Barnes's failure-to-protect and retaliation claims for failure to state a claim on which relief may be granted. (Doc. Nos. 20, 22.)

the record evidence, and for the reasons set forth below, the Magistrate Judge will recommend that the Court grant Garner's motion and enter summary judgment in her favor.

## I.    Background

### A.    Relevant Factual Background[2]

The facts relevant to determination of Garner's motion for summary judgment include three disciplinary actions against Barnes at TTCC and Barnes's attempts to file grievances related to those incidents.

#### 1.    TTCC Disciplinary Violation Convictions[3]

##### a.    Disciplinary Incident ID# 01288447

According to a Tennessee Offender Management Information System (TOMIS) disciplinary report submitted by Garner, a TTCC correctional officer searched a package addressed to Barnes on August 22, 2017, and discovered more than a pound of loose tobacco and eight HTC smart phones with chargers hidden inside of two coffee bags. (Doc. No. 34-1.) Barnes was charged

---

[2]      The facts in this section are drawn from Barnes's verified amended complaint and exhibits (Doc. No. 17); the sworn declarations and exhibits of AnnMarie Houston and Amber Phillips submitted by Garner in support of her motion for summary judgment (Doc. Nos. 27, 28); the sworn declarations and substituted exhibits of Garner and Lybrunca Cockrell submitted by Garner in support of her motion for summary judgment (Doc. Nos. 33, 34); and Garner's statement of undisputed material facts (Doc. No. 29). The only facts presented are those relevant to the remaining due process claim.

[3]      Barnes had an initial parole hearing on December 18, 2017, at which he was told that there were three disciplinary convictions in his TTCC record and that "his time was incorrect and that the file showed some issues with his credits." (Doc. No. 17-7, PageID# 181.) Barnes filed an "Incident Statement" with TTCC on December 18, 2017, claiming that this was the first time he was made aware of these disciplinary convictions and asking that the convictions be removed from his file. (Doc. No. 17-3.) Barnes's allegation that this was the first time he was made aware of the three disciplinary violation convictions against him is contradicted by a Freedom of Information Act Request made on October 16, 2017, in which Barnes asked for copies of the disciplinary reports and his grievances and acknowledges that he pleaded guilty to disciplinary incident 01288447 and was found guilty of disciplinary incident 01290951. (Doc. Nos. 17-1, 17-3, 17-8.)

with conspiracy to violate state law in incident ID# 01288447. (Doc. Nos. 34, 34-1.) Garner asserts in her statement of undisputed material fact that Barnes pleaded guilty to this disciplinary violation. (Doc. No. 29.) The hearing summary for incident ID# 01288447 supports that assertion and shows that Barnes was represented by a "staff advisor" at the disciplinary hearing and agreed to waive his rights "to 24-hour notice[,]" "to have the reporting official present[,]" and "to call witness(es) on [his] behalf." (Doc. No. 34-1, PageID# 403.) Barnes signed this waiver underneath text stating that he "fully underst[oo]d that by entering a plea of guilty" he was waiving these rights and would "not be allowed to appeal." (*Id.* at PageID# 404.) Garner asserts in her declaration that Barnes received a $4.00 fine as punishment for this disciplinary conviction (Doc. Nos. 34, 34-1) and asserts in her statement of undisputed material facts that "Barnes did not lose sentence credits as punishment for his conviction[ ] relating to Disciplinary Incident[ ] 1288447" (Doc. No. 29, PageID# 353, ¶ 4).

Barnes acknowledges that he pleaded guilty to this disciplinary charge but states that he only did so because a prison official told him that, if he pleaded guilty, he would receive only one Class B disciplinary conviction for conspiracy to violate state law and another charge for drug use "would be dropped." (Doc. No. 17-8, PageID# 211.) He states that the official told him that, if he didn't plead guilty, he would be "guaranteed a Class A [for the conspiracy to violate state law charge] and the B for the drug screen." (*Id.*) He also claims that the evidence presented against him in the disciplinary hearing was falsified. (Doc. No. 17.) Barnes supports this claim by arguing that "the photos of the package show no coffee bags and only show two (2) LG model phones" and that "HTC smart phone[s] [are] a very different kind of phone [that are] very large and it is impossible to fit eight phones and eight chargers inside of one small coffe[e] bag[,] [which] shows that there [was] tampering with evidence." (*Id.* at PageID# 143, ¶¶ 4–5.) He also presents evidence

that the tracking number for the package in question shows that it was delivered on August 11, 2017, despite the disciplinary report saying it was not searched until August 22, 2017, and that his mail history does not have any record of a package like the one in the disciplinary report being delivered between August 11, 2017 and August 22, 2017. (Doc. No. 17.) Barnes claims that he did not receive any physical report for this conviction until "the [d]isciplinary [r]eport was sent to [him] seven(7) months after the . . . hearing took place." (*Id.* at PageID# 144, ¶ 10.)

### b. Disciplinary Incident ID# 01290951

According to a TOMIS disciplinary report submitted by Garner, after a TTCC correctional officer ordered Barnes to produce a urine sample for drug screening on September 6, 2017 "Offender Barnes then self admitted to the use of narcotics." (Doc. No. 34-3, PageID# 412.) This disciplinary charge was assigned incident ID# 01290951. (Doc. No. 34-3.) The TOMIS disciplinary report submitted by Garner shows that a prison official served Barnes with a copy of the report on September 7, 2017, but that Barnes refused to sign the document. (*Id.*) Garner asserts in her statement of undisputed material facts that "Barnes was served with the Disciplinary Report for Disciplinary Incident 1290951 over 24 hours before his hearing." (Doc. No. 29, PageID# 353, ¶ 6.) She further asserts that, "[a]t Barnes's hearing relating to Disciplinary Incident 1290951, Barnes was afforded the opportunity to call witnesses and to present evidence, and he testified at the hearing." (*Id.* at PageID# 353, ¶ 7; *see also* Doc. No. 34.) According to the TDOC disciplinary report hearing summary for incident ID# 01290951, the disciplinary board found Barnes guilty of a class B offense for drug selling/possession/use based on the hearing testimony of the reporting official and Barnes's signed Drug Screen Consent/Refusal Form and imposed a $4.00 fine and three months of visitation restrictions. (Doc. Nos. 34, 34-3.) Garner asserts in her statement of undisputed material facts that "Barnes did not lose sentence credits as punishment for his conviction[ ] relating to Disciplinary Incident[ ] . . . 1290951" and that "Barnes was given a copy

of the Disciplinary Report Hearing Summary" after the hearing. (Doc. No. 29, PageID# 353–54, ¶¶ 4, 8.)

Barnes claims that he "has never been served or given this write up and/or has never been to any hearing on this [d]isciplinary report." (Doc. No. 17, PageID# 145, ¶ 4.) He asserts that he was not given the opportunity to call witnesses or testify at a hearing. (Doc. No. 17.) He also claims that the evidence used against him was untrue and that the Disciplinary Report Hearing Summary and Drug Screen Consent/Refusal Form were falsified. (Doc. Nos. 17.) Barnes further states that he was never asked to produce a urine sample and never admitted to any drug use. (Doc. Nos. 17, 17-8.)

### c. Disciplinary Incident ID# 01295170

According to a TOMIS disciplinary report submitted by Garner, a prison official found a syringe hidden in Barnes's cell on September 29, 2017, resulting in Barnes and his cellmate Diego Gonzalez being charged with possession of drug paraphernalia. (Doc. No. 34-2.) The charge against Barnes was assigned the disciplinary incident ID# 01295170. (*Id.*) Garner asserts in her statement of undisputed material facts that Barnes pleaded guilty to this disciplinary charge. (Doc. No. 29.) The TDOC hearing summary for this disciplinary incident supports her assertion and further shows that Barnes again waived his rights "to personally appear before the disciplinary board," "to call witnesses on [his] own behalf," "to present [his] own version of the facts," "to 24-hour notice," and "to have the reporting official present." (Doc. No. 34-2, PageID# 408–10.) Garner states in her declaration, and the hearing summary shows, that, as a result of being found guilty of this class B offense, Barnes received a $4.00 fine, three months of visitation restrictions, and probation. (Doc. Nos. 34, 34-2.) Garner asserts in her statement of undisputed material facts that "Barnes did not lose sentence credits as punishment for his conviction[ ] relating to Disciplinary Incident[ ] . . . 1295170." (Doc. No. 29, PageID# 353, ¶ 4.)

Barnes states that he was never served with this infraction, never pleaded guilty to it, did not have the opportunity to call witnesses or present evidence on his behalf, and did not receive a copy of the disciplinary report until March 7, 2018. (Doc. No. 17.) He asserts that prison officials forged the hearing summary and waiver of disciplinary hearing and due process rights to show that he pleaded guilty to this violation. (*Id.*) Barnes states that it was impossible for him to be guilty of this violation because "he has never seen or met [Gonzales] in his life" and "would never plead [guilty] to [this] charge[]." (*Id.* at PageID# 146, ¶¶ 1–2.)

### 2. Barnes's Redress Attempts

Barnes attached copies of several grievances he filed while incarcerated at TTCC and responses he received from TTCC officials as exhibits to his verified amended complaint.[4] (Doc. No. 17-8.) Two of the grievances relate to disciplinary incidents 01288447 and 01290951. (*Id.*) In a grievance dated September 18, 2017, Barnes asserts that he had "been denied due process" in relation to two disciplinary incidents regarding contraband found in his mail and a drug screen and asked for "a grievance hearing to show [he] [had] been denied due process" and was "not guilty of those write-ups." (*Id.* at PageID# 209.) Barnes received an inappropriate grievance form (CR-3689) in response on September 27, 2017, with no explanation given as to why the grievance was inappropriate. (Doc. No. 17-8.)

Barnes filed a separate grievance referencing disciplinary incidents 01288447 and 01290951 on October 3, 2017, in which he requested copies of the write-ups and the evidence against him.[5] (*Id.*.) Barnes received an inappropriate grievance form in response to this grievance

---

[4] Because no grievance numbers were recorded on these grievances, they will be referred to by the dates they were allegedly filed. (Doc. No. 17-8.)

[5] Barnes also submitted a Freedom of Information Act Request for these and other documents to the TTCC warden on October 16, 2017, which was returned to him on October 18, 2017, for failure to include an additional form necessary to process the request. (Doc. Nos. 17-1,

6

on November 1, 2017, stating that "[d]isciplinary matters are inappropriate to the Grievance Procedure" under TDOC Policy 501.01(VI)(H)(1). (*Id.* at PageID# 215.) The record does not include any grievances submitted by Barnes with respect to disciplinary incident 01295170.

### B.     Procedural History

Barnes filed his original complaint in the Chancery Court for Trousdale County, Tennessee.[6] (Doc. No. 1-2.) Garner and Washburn removed the action to this Court on October 9, 2018. (Doc. No. 1.) Barnes filed a proposed amended complaint and exhibits on April 29, 2019. (Doc. Nos. 17–17-8.) Barnes's amended complaint alleged, under 42 U.S.C. § 1983, violations of his Eighth Amendment rights, his right to due process of law under the Fifth and Fourteenth Amendments, and retaliation for protected conduct. He sought monetary damages, declaratory relief, and injunctive relief expunging his disciplinary convictions and requiring the Tennessee Board of Parole to reinstate his rescinded parole. (Doc. No. 17.)

The Magistrate Judge screened the amended complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A in a report and recommendation on July 2, 2019, finding that Barnes failed to allege sufficient facts to sustain his Eighth Amendment and retaliation claims under § 1983, but recommending that the Court permit his due process claims against Defendant Garner to proceed. (Doc. No. 20.) Barnes filed an objection to the report and recommendation. The District Judge overruled that objection, adopted the report and recommendation in its entirety, and dismissed Barnes's Eighth Amendment and retaliation claims. (Doc. No. 22.)

_____

17-2.) Nothing in the record suggests that Barnes resubmitted this request. The other documents Barnes requested included the write-ups and evidence used against him for disciplinary incident 01295170.

[6]     It appears that Barnes signed his original complaint on May 3, 2018 (Doc. No. 1-2, PageID# 14), but the record does not reflect the date on which the original complaint was filed in state court.

On November 1, 2019, Defendant Garner filed a motion for summary judgment (Doc. No. 23), which she supports with a memorandum of law, declarations, and a statement of undisputed material facts (Doc. Nos. 24–29).[7] Garner argues that Barnes did not exhaust the administrative remedies available to him at TTCC because he did not appeal the denial of his grievances for being non-grievable. (Doc. No. 24.) She further argues that, even if Barnes did exhaust his administrative remedies, his due process claims fail because his previously earned good time credits were not revoked in any of the disciplinary hearings and Barnes received all of the process to which he was entitled in each of the three disciplinary actions. (*Id.*) Barnes responded in opposition to the motion for summary judgment (Doc. No. 31) but did not respond directly to Garner's statement of undisputed material facts. Barnes argues that he "exhausted all of the ins[ti]tutional rem[e]dies" by filing "[g]riev[a]nces on all of the claims made in his or[i]ginal complaint." (*Id.* at PageID# 357, ¶ 4.) He also argues that he did not receive adequate due process in the three disciplinary hearings and, specifically, "that he has never been to any hearings . . . in question" and that many of the documents submitted by Garner in support of her argument that he received adequate due process are "false and forged." (*Id.* at PageID# 357–58, ¶¶ 3, 5.)

## II. Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[7]     Following Barnes's response in opposition to her motion for summary judgment, Garner filed substituted exhibits to two of the declarations in support of her motion for summary judgment. (Doc. Nos. 32–34.) These substituted exhibits included no new material and Barnes has not objected to them. (*Id.*)

250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence

9

in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.     Analysis

### A.     Local Rule 56.01 and Defendant Garner's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Each of these facts "must be set forth in a separate, numbered paragraph," "must be supported by specific citation to the record," and "the word 'response' must be inserted and a blank space provided that is reasonably calculated to allow the non-moving party sufficient space to respond to the assertion that the fact is undisputed." *Id.* Parties opposing a motion for summary judgment must respond specifically to each asserted fact by "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Pro se parties are not excused from this requirement. *Id.* "If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn. R. 56.01(f) (failure to respond).

Defendant Garner filed a statement of undisputed material facts with her motion for summary judgment in compliance with the local rules. (Doc. No. 29.) Barnes failed to respond to those assertions. Local Rule 56.01(f) requires the Court to take an unaddressed asserted undisputed fact as true, and the Court takes Garner's asserted undisputed facts not addressed by Barnes as true

here. However, Local Rule 56.01(f) applies only to "*facts*, not argument, conclusions, or legal principles." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 690 n.1 (M.D. Tenn. 2019) (emphasis in original); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) (providing that unaddressed "asserted *facts* shall be deemed undisputed for purposes of summary judgment" (emphasis added)).

"[T]he party moving for summary judgment has the burden to show that he is entitled to judgment . . . ; and if he does not discharge that burden[,] then he is not entitled to judgment. No defense to an insufficient showing is required." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.22(2) (2d ed. 1966)). Therefore, even though Barnes did not respond to Garner's statement of undisputed material facts, the Court still must examine the evidence Garner offers in support of her motion for summary judgment to determine if she has met her initial burden. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 447 U.S. at 330 ("The burden of establishing the nonexistence of a 'genuine dispute' is on the party moving for summary judgment. The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."); *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Pewitte v. Hiniger*, No. 3:17-cv-00822, 2020 WL 2218754, at *9 (M.D. Tenn. May 6, 2020). Under Rule 56(c)(3), the Court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[T]he rule also recognizes that a court may consider record materials not called to its attention by the parties."). Finally, the Court must view the movant's evidence in the light most favorable

to the nonmoving party. *Adickes*, 398 U.S. at 157 ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it has lodged must be viewed in the light most favorable to the opposing party.")

### B. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires plaintiffs to exhaust all available administrative remedies, including prison grievance procedures, before filing an action addressing the conditions of their confinement. 42 U.S.C. § 1997e(a) (2013); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Himmelreich v. Fed. Bureau of Prison*s, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd*, 136 S. Ct. 1843 (2016). This exhaustion requirement allows corrections officials the opportunity to address complaints internally before litigation. *Porter*, 534 U.S. at 525. To properly exhaust a claim, an incarcerated person must have "complie[d] with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). The incarcerated person must appeal the grievance to the highest possible administrative level in accordance with the administrative policies and procedures. *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

"So long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)). An exception to this rule applies, however, if the process is not available to the incarcerated person. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). In order for grievance procedures to be deemed available, the procedures must be "capable of use" to obtain "some relief for the actions complained of." *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). A procedure is not available when (1) officials are unable or consistently unwilling to provide any relief to the aggrieved individuals; (2) the administrative procedure is so opaque that it is practically incapable

of use because no ordinary prisoner can successfully navigate the system; or (3) the incarcerated person is thwarted from taking advantage of the system through misrepresentation or intimidation. *Ross*, 136 S. Ct. at 1859–60. Regardless, courts require an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cty.*, 636 F.3d 218, 223–24 (6th Cir. 2011) (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009)). Once it is shown that such efforts were made, courts analyze "whether an inmate's efforts to exhaust were sufficient under the circumstances." *Napier*, 636 F.3d at 224.

Administrative exhaustion is an affirmative defense under the PLRA for which defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because defendants also bear the burden of persuasion on PLRA exhaustion at trial, their "'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). If this burden is met, the plaintiff is required "to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248). Therefore, to prevail on her exhaustion argument at summary judgment, Garner must show that no reasonable jury could find that Barnes exhausted his available administrative remedies.

Garner asserts in her statement of undisputed material fact that "Barnes failed to exhaust his administrative remedies at [TTCC] regarding his due process claims." (Doc. No. 29,

PageID# 352, ¶ 2.) Because this is a conclusion of law and not an assertion of fact, the statement is not deemed undisputed for the purposes of summary judgment under Local Rule 56.01(f) even though Barnes did not respond to it. *See* M.D. Tenn. R. 56.01(f) (failure to respond); *New Century Found.*, 400 F. Supp. 3d. at 690 n.1. The Court must therefore determine whether Garner has offered sufficient proof to remove any genuine question of fact that Barnes did not exhaust his administrative remedies.

Garner argues that Barnes failed to exhaust his claims under TDOC Policy 501.01, which establishes a three-level procedure that governs inmate grievances relating to the conditions of their confinement. (Doc. Nos. 24, 33, 33-1.) Under Policy 501.01, the incarcerated person must file a grievance "utilizing a CR-1394 [form] within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance." (Doc. No. 33-1, PageID# 371.) A grievance that is "improperly completed or contain[s] insufficient information . . . shall be returned to the inmate with instructions as to proper completion." (*Id.*) If the grievance is denied, the grievant may appeal denial of the grievance to the grievance committee and Warden within five calendar days of being notified of the Level I response. (Doc. No. 33-1.) Finally, if the grievance is denied by the grievance committee and Warden, the grievant may appeal the Level II response to the Deputy Commissioner of Operations, again within five calendar days. (*Id.*)

Policy 501.01 also provides that this grievance process is inappropriate for "appealing or seeking review of procedures or punishment imposed under established disciplinary procedures of the TDOC." (*Id.* at PageID# 373.) Per the TDOC Inappropriate Grievance Notification Form (CR-3689) and Policy 501.01, if a grievance is found to address a non-grievable matter, the incarcerated individual must "make the necessary corrections and return [the grievance] to the Grievance Office

for further processing" or appeal the response by indicating intent to appeal on the original grievance and resubmitting it. (*Id*. at PageID# 372–73, 383.)

Barnes alleges that Garner violated his due process rights during the disciplinary hearing procedures for the three alleged disciplinary violations that occurred between August 22, 2017 and September 29, 2017. (Doc. No. 17.) Therefore, Barnes must exhaust all available administrative remedies regarding disciplinary hearing due process violations in order to put prison officials on notice of his claims. 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 525. Garner argues that Barnes did not exhaust his administrative remedies because he did not complete the Policy 501.01 grievance remedy process to the highest institutional level by appealing the administrative decision that his grievances were not grievable, as Policy 501.01 allows.[8] (Doc. No. 24.) The grievances and grievance responses attached to his amended complaint show that Barnes attempted to grieve his allegations of due process violations reg disciplinary violations 01288447 and 01290951, but that these grievances were denied as non-grievable. (Doc. No. 17-8.) The grievance Barnes submitted on October 3, 2017, was specifically deemed not grievable because "appealing or seeking review of procedures or punishment imposed under established disciplinary procedures of the TDOC" is inappropriate for the Policy 501.01 grievance procedure. (*Id*. at PageID# 215; Doc. No. 33-1.) Nothing in the record suggests that Barnes attempted to amend his grievances or that he appealed the decision that they were non-grievable. (Doc. Nos. 17, 24, 33.)

---

[8]     The Court acknowledges that Garner, in her memorandum in support of motion for summary judgment, questions the veracity of these grievances and the responses to them. (Doc. No. 24.) The only evidence that Garner offers in support of this argument is that the copies of the grievances submitted do not conform with the standard procedures observed by TTCC when receiving an inmate's grievance and that they are not recorded in the TTCC or TDOC grievance database. (Doc. Nos. 24, 33.) Viewing this evidence most favorably to the nonmoving party, Garner has not met her burden to establish that there is no genuine dispute as to whether these submitted grievances are valid and appropriately submitted.

When PLRA exhaustion is raised as an affirmative defense, courts "generally treat inmate complaints in the same way as prison officials have treated them." *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). Thus, when a prison system has a blanket policy against allowing inmates to grieve certain types of claims, courts will not require those claims to be exhausted through the grievance procedure. *See Wyatt*, 193 F.3d at 878; *Rancher v. Franklin Cty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (holding that statement by jailor that medical issue was "not grievable" constituted a "flat rule" against medical grievances that justified excusing the exhaustion requirement (citing *Wyatt*, 193 F.3d at 878)). Exhaustion of an administrative remedy is not required when grievances consistently meet a dead end with the officers unable or unwilling to provide any relief to the aggrieved individuals. *Ross*, 136 S. Ct. at 1859.

Construing the evidence in Barnes's favor, the grievance responses show that the administrative procedure established by Policy 501.01 was not in fact available to Barnes to seek relief for his claims. TTCC has a blanket policy against "appealing or seeking review of procedures or punishment imposed under established disciplinary procedures of the TDOC" through Policy 501.01 procedures. (Doc. No. 33-1, PageID# 373.) TTCC officials enforced this policy in finding Barnes's grievances non-grievable. (Doc. No. 17-8.) Therefore, Barnes did not have any available remedy to seek redress for his disciplinary convictions through Policy 501.01. No matter how many grievances he submitted using Policy 501.01 procedures or how many levels of appeals he pursued, TTCC would always deem these grievances as non-grievable in accordance with Policy 501.01. "There is a substantive difference between a prisoner who does not appeal from a grievance response with which he is dissatisfied and a prisoner who does not appeal because prison officials inform him that he cannot grieve the matter at issue." *Holley v. Corr. Corp. of Am.*, No. 3:13-0114, 2013 WL 4536947, at *3 (M.D. Tenn. Aug. 26, 2013). Because the grievance

procedure would always lead to a dead end for Barnes, he was not required to pursue that administrative remedy in order to satisfy the PLRA exhaustion requirement. 42 U.S.C. § 1997e(a); *Owens*, 461 F.3d at 769. Garner has not shown that summary judgment is appropriate on exhaustion grounds.

### C. Barnes's Due Process Claim

The Due Process Clause of the Fourteenth Amendment affords incarcerated individuals procedural protections before they are deprived of their life, liberty, or property. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has recognized, however, that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Id*. at 555 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). For example, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id*. at 556.

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause . . . , (2) that they were deprived of this protected interest . . . , and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). When there is a protected due process liberty interest at stake in a prison disciplinary proceeding, the Due Process Clause requires that an incarcerated person must receive (1) written notice of the charges against him at least twenty-four hours prior to the proceeding; (2) a written statement by the factfinders of the evidence relied on and the reason for the disciplinary action taken; (3) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not threaten institutional safety or correctional goals; and (4) where the inmate is illiterate, aid from a fellow inmate or member of

the prison staff. *Wolff*, 418 U.S. at 563–70. Whether a plaintiff has a liberty interest at stake in the hearing is a threshold question that must be addressed before reaching the question of what process was due. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Courts look to two sources to determine whether a protected liberty interest exists in the prison disciplinary context. *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). The first is the Fourteenth Amendment Due Process Clause, which extends procedural safeguards to a prisoner whose liberty is restrained in a way that "exceed[s] the [prisoner's] sentence in . . . an unexpected manner." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *see, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (holding that incarcerated person had a liberty interest in avoiding involuntary psychiatric treatment and involuntary transfer to a mental institution). Generally, an institutional disciplinary action does not implicate a liberty interest under the Fourteenth Amendment because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Moreover, there is no federal constitutional right to "good-time credit for satisfactory behavior while in [state] prison." *Wolff*, 418 U.S. at 557. Therefore, Barnes does not have a liberty interest in sentence credits protected by the force of the Fourteenth Amendment Due Process Clause itself.

The second source of protected liberty interests is state law. *Sandin*, 515 U.S. at 484; *Wolff*, 418 U.S. at 557–58. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause" when they impose restraints on incarcerated individuals that do not exceed their "sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin*, 515 U.S. at 483–84. State laws and policies have been found to create protected liberty interests when (1) they enforce substantive limitations on

official discretion to impose punishment on inmates that inevitably affects the duration of their sentence, or (2) impose restraints on inmates that are atypical and significant in relation to the ordinary incidents of prison life. *Id*. at 483–87; *Wolff*, 418 U.S. at 557–58; *see Grinter v. Knight*, 532 F.3d 567, 573–75 (6th Cir. 2008) (holding that an incarcerated individual had no protected liberty interest because being placed in four-point restraints is an expected adverse consequence of confinement and because state law gave prison officials full discretion to deny a prisoner future good-time credits).

Barnes does not assert that the punishment he received as a result of disciplinary incidents 01288447, 01290951, and 01295170 was atypical or significant in relation to ordinary prison life. Even if he did claim this, nothing in the record suggests that the nature or duration of the punishment he received—which included small fines, visitation restrictions, and institutional probation—was atypical or significant. *See Bazzetta v. McGinnis*, 430 F.3d 795, 804–05 (6th. Cir. 2005) (finding no due process right to prison visitation because it is consistent with the status of being incarcerated). Further, Barnes cannot state a claim that these disciplinary convictions affected the duration of his sentence by causing his parole to be denied because success on the merits of such a claim would necessarily imply the invalidity of his confinement, which makes the claim not actionable under § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1973).

The next question is whether Barnes has a state-created protected liberty interest for which he did not receive adequate due process. Tennessee has created a statutory right to due process before an inmate is deprived of previously earned sentence credits, which can be lost "only for the commission of any major infraction designated by the [TDOC] as a Class A disciplinary offense." Tenn. Code Ann. § 41-21-236(a)(5) (2019); *Armistead v. Tenn. Dep't of Corr.*, No. 3:08-0775, 2009 WL 677893, at *4 (M.D. Tenn. Jan. 14, 2009) (finding that "punishment [that] included the

loss of accrued good time credits . . . entitled the plaintiff to the procedural safeguards in *Wolff*,"
but dismissing the plaintiff's claims on other grounds); *Garrard v. Tenn. Dep't of Corr.*,
No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *7 (Tenn. Ct. App. May 8, 2014) (holding
that "the loss of previously earned sentence reduction credits . . . implicate[s] an interest sufficient
to invoke due process" (alteration omitted) (quoting *Seals v. Bowlen*, No. M1999-00997-COA-
R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001))). Therefore, "the prisoner's
interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to
entitle him to those minimum procedures appropriate under the circumstances and required by the
Due Process Clause to [e]nsure that the state-created right is not arbitrarily abrogated." *Wolff*, 418
U.S. at 557.

But this liberty interest is not implicated in Barnes's case. Garner asserts in her statement
of undisputed material facts that "Barnes did not lose sentence credits as punishment for his
convictions relating to Disciplinary Incidents 1288447, 1290951, and 1295170" and supports that
assertion with specific evidence in the record. (Doc. No. 29, PageID# 353, ¶ 4; Doc. No. 34.)
Barnes did not respond to this assertion, and there is nothing in the record to suggest that Barnes
did, in fact, lose any sentence credits as punishment for the disciplinary infractions. (Doc. Nos. 17,
29, 31.) We "reach the question of what process is due only if the inmate[ ] establish[es] a
constitutionally protected liberty interest." *Wilkinson*, 545 U.S. at 221. Barnes has not done so,
and the Court need go no further in its analysis. Summary judgment for Garner is appropriate on
Barnes's due process claim.

## IV.     Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Defendant Garner's
motion for summary judgment (Doc. No. 23) be GRANTED and that judgment be entered in her
favor.

20

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of July, 2020.

ALISTAIR E. NEWBERN
United States Magistrate Judge